IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRYANT F. CANNINGTON, JR.,
    Plaintiff,

vs.                                            Case No.: 5:16cv208/EMT

NANCY A. BARNHILL,
Acting Commissioner of Social Security,
    Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 11, 12). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; therefore, the decision of the Commissioner should be reversed and remanded.

I.      PROCEDURAL HISTORY

On April 23, 2012, Plaintiff filed an application for SSI, alleging disability beginning February 8, 2012 (Tr. 12).[1] His application was denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 3, 2014, and on September 5, 2014, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (Tr. 12–23). The Appeals Council subsequently denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

Prior to the above proceedings, Plaintiff had filed an earlier application for disability insurance benefits and for SSI, alleging disability beginning on July 1, 2005 (Tr. 68). After a hearing held on December 16, 2011, before a different ALJ, the ALJ issued a decision finding that Plaintiff was limited to a sedentary level of exertion but was not disabled at any time through February 7, 2012, the date of his decision (Tr. 68–78). Plaintiff filed the instant application shortly thereafter.

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on November 14, 2016 (ECF No. 14). The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

## II. FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* Tr. 12–23):

(a) Plaintiff had not engaged in substantial gainful activity since April 23, 2012, the application date;

(b) Plaintiff had the following severe impairments: degenerative disc disease; hypertension; obesity; and hiatal hernia;

(c) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(d) Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except he could lift and carry up to 20 pounds occasionally and 10 pounds frequently; he could stand, walk, and sit with normal breaks for 6 hours in an 8-hour work day; and he had the ability for unlimited pushing and pulling;

(e) Plaintiff was capable of performing his past relevant work as a security guard. This work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity; and

(f) Plaintiff had not been under a disability, as defined in the Act, since April 23, 2012, the date the application was filed.

## III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218

(11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:16cv208/EMT

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent his from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Case No.: 5:16cv208/EMT

## IV.  PLAINTIFF'S PERSONAL AND MEDICAL HISTORY[3]

### A.  Personal History

At Plaintiff's hearing, he testified that his last job was during the seven years he worked as a security officer, which he quit in 2001 on the advice of his doctor (Tr. 37–38). Plaintiff testified that he now lives with his parents (Tr. 33), and during the day he generally sits at home, watches TV, and talks with his parents (Tr. 35). He stated that he does not cook, wash dishes, do the laundry, clean, do yard work, or shop for groceries, and that he can take out the garbage only if it is a very small bag (Tr. 35–36). Plaintiff testified that he does the driving for his family, including going to church and taking his parents to their doctor appointments, as well as for grocery shopping, and he stated that he had driven to the hearing (Tr. 33).

Plaintiff testified that he has pain in his hands, arms, back, legs, feet, and chest, for which he takes over-the-counter Tylenol (Tr. 34). He stated that the Tylenol was not effective in relieving the pain but that he could not afford prescription medication because of the cost and his lack of health insurance to cover the cost (Tr. 47–48). He stated that on average he could sit for about 20 to 30 minutes before having to shift

---

[3] Because the foundation of the court's opinion lies with Plaintiff's claim regarding the assessment of his anxiety or panic attacks, the court primarily focuses its attention on those aspects of the record that concern Plaintiff's mental health.

Case No.: 5:16cv208/EMT

or lie down because of back spasms (Tr. 48). He testified to using a cane for balance and for when he is experiencing pain (Tr. 49). He estimated that he could walk 50 to 60 feet and stand about 10 minutes without exacerbating his back or leg pain (Tr. 49–50). Plaintiff also testified to having difficulty reaching overhead and gripping objects (Tr. 50–52). Plaintiff further described having pain and numbness in his hands, which causes him difficulty in gripping objects and picking them up, and that he cannot feel a pinprick to his fingers (Tr. 38–40).

Plaintiff additionally testified about his anxiety or panic disorder, stating that he had panic attacks that occurred without notice, even when he is simply talking to his parents (Tr. 51). He described his attacks as involving a racing heartbeat, profuse sweating, pounding in his head, and nausea that force him to lie down (Tr. 50–51). Plaintiff provided that the attacks could last between 20 and 30 minutes, and on average they would occur one to seven times per week (Tr. 51). In one instance he stated he had about 20 attacks in one day (*id.*).

B.   Relevant Medical History

In a Supplemental Anxiety Questionnaire submitted by Plaintiff on June 2, 2012, he described experiencing anxiety attacks for the past three and a half years, having had approximately 70 to 75 attacks in the last three months and close to 150 attacks in the previous six months, and having had six attacks on the day he filled out the form (Tr. 214–15). Plaintiff stated that his panic attacks would last from five to

thirty minutes at a time and would cause symptoms such as a racing heart, sweating, head throbbing, nausea, and pain in the shoulders, arms, and sometimes the chest (Tr. 215). He indicated that nothing he knows of brings on the attacks and that sometimes he wakes up at night having an attack (*id.*). He stated that lying down and wiping a cold washcloth on his face can help relieve symptoms (*id.*). In answer to a question regarding how the attacks affect his ability to function, Plaintiff expressed fear that he does not know when or where an attack may occur (Tr. 216). Plaintiff seemed to express frustration that no doctor has been able to diagnose the cause of these attacks (Tr. 215). Plaintiff's mother filled out a similar form that corroborated Plaintiff's anxiety attacks and symptoms (Tr. 217–19).

On June 21, 2012, Cara Wheeler, Psy.D., conducted a clinical interview with Plaintiff. During the interview Plaintiff reported that he was not currently taking any psychotropic medication, nor had he any history of mental health treatment other than being prescribed Paxil by his primary care physician (Tr. 306). Plaintiff stated that he has had many "spells" that produce head pressure, dizziness, chest and shoulder pain, and perspiration, and that they last from five to thirty minutes (*id.*). Plaintiff denied having any difficulty breathing during these episodes or "feeling that he is dying or going crazy" (*id.*). Plaintiff evidently described these spells as "mysterious,"

as waking him at night sometimes, and as preventing him from leaving his home because he is afraid of having an attack in public (*id*.).

Dr. Wheeler noted that Plaintiff's (unidentified) cardiac tests came back normal (Tr. 306). While Plaintiff was observed to be somewhat unkempt with body odor, he was otherwise perceived as appearing normal and behaving appropriately and cooperatively (Tr. 307). Dr. Wheeler found Plaintiff to be able to speak normally and coherently and to be able to respond to questions appropriately (*id*.). She diagnosed Plaintiff as having "Panic Disorder with Agoraphobia (provisional)," but while this was in recognition of Plaintiff's spells which "include[d] many symptoms commonly associated with anxiety," she also noted that Plaintiff denied feeling panicked during his spells and that he would feel dizzy but not experience shortness of breath (Tr. 307–08). As Plaintiff had recently been prescribed a second prescription for his uncontrolled high blood pressure, and because Plaintiff reported that it was during this time that his spells increased, Dr. Wheeler opined that his spells could have a "medical explanation" (Tr. 308). Consequently, Dr. Wheeler stated that she was unable to make a clear diagnosis about Plaintiff's psychological condition without a thorough cardiac evaluation (*id*.).

On July 28, 2012, Plaintiff was examined at the request of Disability Determination Services by Joseph C. Siano, D.O., who largely commented on

Case No.: 5:16cv208/EMT

Plaintiff's physical ailments but did make the statement that Plaintiff's "[a]llegation of anxiety appears to pose no functional [limitation] at this time" (Tr. 312).

In completing an August 31, 2012, Disability Report, Plaintiff responded to a question, which asked whether he had any new illnesses or conditions, that his spells were getting worse; he also reiterated that he fears going out anywhere because he might have another spell (Tr. 225, 228).

On November 6, 2012, Plaintiff was seen for a physical consultative examination by Carla M. Holloman, D.O., who noted: "[Plaintiff] was diagnosed with hypertension in the 1990's. He complains, but, this only occurs with anxiety attacks. He does not carry a formal diagnosis of anxiety nor has he been prescribed any medications." (Tr. 329).

On December 19, 2013, Plaintiff was seen by Quin E. Chadwick, ARNP, who noted that Plaintiff had been admitted to the hospital the previous week because of chest pain (Tr. 345). Plaintiff had a "cardiac workup," was told he had anxiety, and was released the next day (*id.*). Accordingly, ARNP Chadwick indicated that Plaintiff's anxiety could be related to his chest pain (Tr. 346). Plaintiff's mood and affect at the examination were observed to be normal, however (*id.*). ARNP Chadwick prescribed visteral (hydroxyzine Hcl) for Plaintiff's anxiety, to be used when he felt an "attack coming on"; she also indicated that Plaintiff should take the

Case No.: 5:16cv208/EMT

medication when he "feel[s] chest pain starting," evidently to rule out anxiety (*see* Tr. 347).

V.   DISCUSSION

As is relevant here, Plaintiff contends in his second claim that the ALJ erred in her evaluation of Plaintiff's anxiety as a mental impairment at Step Two and while assessing his RFC at Step Four.  In her Step Two analysis, the ALJ found Plaintiff's anxiety not to be a severe impairment.  The ALJ determined 1) that the record did not contain "any findings which would support any significant functional limitations" and 2) that Plaintiff's condition had improved with conservative treatment (Tr. 14).

In determining Plaintiff's anxiety to be non-severe, the ALJ gave some weight to the opinion of Jill Rowan, Ph.D., a non-examining medical source who, on July 2, 2012, found Plaintiff to have only mild difficulties in maintaining social functioning, no difficulties with maintaining concentration, persistence or pace, and no episodes of decompensation of an extended duration (Tr. 21–22, 91).[4]

In the next paragraph, which is virtually identical to the paragraph describing Dr. Rowan's findings, the ALJ gave some weight to the findings of Patricia A. Clark,

---

[4] In so providing, the ALJ recognized that, as a non-examining medical source, Dr. Rowan's opinion would not generally carry the same weight as an examining or treating physician (Tr. 21). The ALJ also indicated, as she did with all of the examining sources she cited, that Dr. Rowan "did not have the benefit of reviewing all the evidence received at the hearing level prior to making her assessment" (Tr. 22).

Case No.: 5:16cv208/EMT

who, on September 18, 2012, had likewise determined that Plaintiff had mild difficulties in maintaining social functioning but no difficulties with maintaining concentration, persistence or pace, and no episodes of decompensation of an extended duration (Tr. 22, 105).

Both Drs. Rowan and Clark provided in support of their opinions that Plaintiff lacked a "mental health history"; that he was taking no medication for his anxiety; that while he reported having spells he denied having panic as one of the symptoms; that he engaged in certain daily activities[5]; and that when Dr. Wheeler provided her diagnosis of Panic Disorder with Agoraphobia, she indicated it was a provisional diagnosis because of the possible medical explanation for Plaintiff's symptoms (Tr. 91–93, 105–07).

The ALJ also noted the fact that Plaintiff was able to testify before her at the hearing without apparent difficulty, and she also generally noted that Plaintiff was cooperative during his interview with Dr. Wheeler without any concentration deficits

---

[5] The ALJ recounted these activities as follows:

> [T]he claimant can complete the following cognitive activities with occasional and/or no assistance: dial a telephone, shop in stores, prepare simple meals, complete light household chores, go to doctors' appointments, pick up medicine, visit family, visit friends, spend time with others in person, spend time with others on the phone, watch television, manage his own funds, go to church, go outside alone, and go outside daily.

(Tr. 17).

(Tr. 17, 20). Further, the ALJ cited the fact that Dr. Wheeler's diagnosis was unclear regarding the cause of Plaintiff's symptoms (Tr. 20).

As is relevant to the issue at bar, the ALJ posed the following hypothetical question to the Vocational Expert ("VE") at the hearing:

> Q: E4F and E3F will be the next hypothetical. E4F is the physical CE.[6] Allegation . . . of back pain appears to pose no functional limitation at this time. Allegation of high blood pressure appears to pose no functional limitation at this time. Allegation of numbness in the hands appear[s] to pose no functional limitation at this time. Allegation of high blood pressure appears to pose no functional limitation at this time and allegation of anxiety appears to pose no functional limitation at this time. And the E3F, it's a psychological CE by Dr. Wheeler and she diagnosed him with a panic disorder. But in her conclusion and summary she indicated that he has some spells that may be a result of uncontrolled high blood pressure or might be psychological in nature. And because there is no medical explanation, it is unclear about what his psychological RFC should be. So she says it is difficult to make any clear judgment about his psychological health, so we don't have anything as far as the psychological. <u>So that will be based on E4F only</u>. So could that individual do the Claimant's past relevant work?
>
> A: I believe so, Your Honor.

(Tr. 53–54) (emphasis added).

---

[6] E4F and E3F refer to exhibits that are the consultative examination reports of Dr. Siano and Dr. Wheeler, respectively. It is surmised that "CE" means consultative examination.

Case No.: 5:16cv208/EMT

Thus, it is fairly evident from this hypothetical question that the ALJ directly excluded Plaintiff's anxiety, or at least his "spells," regardless of their origin, from consideration in the hypothetical questions posed to the VE.

Plaintiff contends that he does not take medication, or ostensibly seek other treatment, for his anxiety because he is indigent and therefore unable to afford it. As the Eleventh Circuit has held, noncompliance with a prescribed treatment regimen does not prevent a social security claimant from receiving benefits when the reason for his noncompliance is beyond his control, such as when he is unable to afford the treatment. Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing Dawkins v. Bowen, 848 F.2d 1211, 1213-14 (11th Cir. 1988)). Thus, "poverty excuses noncompliance," and "while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.'" Dawkins, 848 F.2d at 1213 (quoting Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986) and collecting cases). These holdings are applicable in this case where Plaintiff appeared to be near a diagnosis for his "spells," be they determined to be from anxiety, a cardiac condition, and/or a reaction to medication, but a firm diagnosis is frustrated by Plaintiff's alleged inability to afford follow-up care.

Case No.: 5:16cv208/EMT

Plaintiff also makes the point that the failure to achieve or obtain a diagnosis for his "spells" does not negate the fact that he may nevertheless have a severe or debilitating impairment. Plaintiff thus attacks the ALJ's seeming reliance on Dr. Wheeler's inconclusive diagnosis as support for her finding that Plaintiff was not disabled (*see* Tr. 16, 17, 20). Indeed, it appears that Plaintiff's anxiety was not identified as a severe impairment simply because there was no certain diagnosis of his problem.[7]

Equally, the issue of how Plaintiff's spells and their symptoms might impose functional limitations upon him does not appear to have been considered by the ALJ, again apparently because of the lack of a firm or final diagnosis. As Defendant recognizes, a diagnosis alone is insufficient to establish a limitation; a limitation is measured by its effect on a person's ability to work, "not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); *see also* Russell v. Astrue, 331 F. App'x 678, 681 (11th Cir. 2009); Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). "Medical diagnosis is seldom an exact science." Landess v. Weinberger,

---

[7] However, Defendant's point is well taken that the exclusion of anxiety from the ALJ's listing of severe impairments was not by itself cause for error. *See* Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951–52 (11th Cir. 2014).

Case No.: 5:16cv208/EMT

490 F.2d 1187, 1189 (8th Cir. 1973). Diagnoses themselves are insufficient, and where, as here, there are questions or shortcomings about the source or extent of a claimant's impairment, the ALJ "has a duty to fairly and fully develop the matters at issue." *Id.*; *see also* Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). "This special duty requires the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); *see also* Harrison v. Commissioner of Social Sec., 569 F. App'x 874, 878–79 (11th Cir. 2014).[8]

Moreover, there is an important feature to Plaintiff's "spells" that to this point appears to have been overlooked: their episodic nature. In this regard, the court models its finding on the Eleventh Circuit's opinion in Mace v. Commissioner, Social Sec. Admin., 605 F. App'x 837 (11th Cir. 2105). The core of that decision was the court's determination that the claimant, who suffered from bipolar disorder and was responding erratically to treatment, would be expected to have "good days and bad days," and so the simple fact that the claimant might have symptom-free intervals could not by itself provide a basis upon which to negate disability. *Id.* at 843–44.

---

[8] The status of Plaintiff's anxiety issue appears even more muddled and unresolved when one considers the fact that nearly all of the medical examinations of Plaintiff took place in 2012 and Plaintiff reported during his hearing before the ALJ in June of 2014 that his symptoms had worsened and his attacks were occurring with great frequency (Tr. 50–51).

As the Eleventh Circuit further explained:

> Suppose that half the time [the claimant] is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job. That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment.

*Id.* at 843 (quoting <u>Bauer v. Astrue</u>, 532 F.3d 606, 609 (7th Cir. 2008)).

While the instant case might differ from <u>Mace</u> in that Plaintiff's attacks appear to be more short-lived—but more frequent—the point made in <u>Mace</u> was that the ALJ needs to consider the mercurial, unpredictable nature of an impairment such as this and its possible effects on the claimant's ability to work. Seen in this light, the fact that Plaintiff may have appeared cogent and unaffected during his medical interviews, for instance, carries less weight than normal. It is also clear that the ALJ made no allowance for this issue in her RFC determination or in her hypothetical questioning of the VE. In sum, the overall picture of the findings regarding Plaintiff's mental health appear to be based upon how he presented during times when he was not subject to one of his attacks or "spells," and if this is because the ALJ ruled out the episodic occurrence of these attacks as a basis for a limitation on his functionality, there is no evidentiary support for this in her opinion.

As a final note, the Eleventh Circuit also made the following point regarding the ability to function in the workplace with a mental health impairment:

>       [T]he ALJ failed to consider that persons with chronic psychotic mental impairments like [the claimant] "may commonly have [their] li[ves] structured in such a way as to minimize [their] stress and reduce [their] symptoms and signs." 20 C.F.R. § 404, Subpt. P., App. 1, § 12.00(E). For that reason, such individuals "may be much more impaired for work than [their] symptoms and signs would indicate." *Id.*; *see also* 20 C.F.R. § 404, Subpt. P., App. 1, § 12.00(C)(3) ("We must exercise great care in reaching conclusions about [a claimant's] ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on [a claimant's] ability to complete tasks in other settings that are less demanding, highly structured, or more supportive."); *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) ("With regard to mental disorders, the Commissioner's decision must take into account evidence indicating that the claimant's true functional ability may be substantially less than the claimant asserts or wishes." (citation and internal quotation marks omitted)).
>
>       Because the ALJ did not account for the effect of the environment on [the claimant], the ALJ . . . often emphasiz[ed] the importance of evidence regarding [the claimant]'s signs and symptoms without addressing how her mental impairments would translate to consistent employment in a competitive work environment.

*Id.* at 842. In the instant case, the ALJ identified certain baseline activities of daily living that Plaintiff could perform, but as the Eleventh Circuit discusses, certain work environments or routines may prove to be inappropriate based upon their effects upon his mental health.

As discussed earlier, the ALJ maintains a responsibility to ensure a comprehensive record in order to fully develop the facts and issues. Ellison v. Barnhart, 355 F.3d at 1276; Graham, 129 F.3d at 1423. On remand, the court directs

Case No.: 5:16cv208/EMT

the Social Security Administration to consider the stresses of a work environment, as well as the fluctuating or episodic nature of Plaintiff's alleged attacks—and to better determine their medical source—when determining Plaintiff's RFC and any additional limitations on his functionality on account of these attacks.

In conclusion, for the reasons provided above, this case should follow the general rule when errors occur, which is to reverse and remand for additional proceedings. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223–24 (11th Cir.1991).

Accordingly, it is **ORDERED:**

1. The Commissioner's decision denying benefits is **REVERSED**.

2. This case is **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

At Pensacola, Florida this 29th day of September 2017.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**